## ROBERTSON *v.* SOUTHWESTERN COMPANY.

### Opinion delivered November 11, 1918.

1. SALES—CONTRACT CONSTRUED.—Contract construed to be a sale and not the employment of an agent.

2. CORPORATIONS—FOREIGN CORPORATION DOING BUSINESS IN STATE.— A contract by a foreign corporation for the sale of merchandise to be shipped from the vendor's place of business in another State to the purchaser in this State does not constitute the doing business in this State so as to bring the transaction within the statute prohibiting foreign corporations from doing business here without first filing copies of its articles of incorporation and obtaining permission to do business.

3. GUARANTY—ALTERATION.—Where a contract of guaranty which stipulated that the guarantors would be responsible for books purchased by one R., provided R. should fail to make payment therefor "within thirty-five days after each shipment" was without the guarantors' consent altered so as to require payment "within a reasonable time after each shipment," the alteration was material and avoided the contract of guaranty.

4. ALTERATION OF INSTRUMENT—EFFECT.—The rule that a change in a contract made by an agent without authority is to be considered a mere spoliation, which does not discharge the contracting parties from liability, has no application where the agent had authority to negotiate the contract, and where by accepting the contract the principal ratified the alteration.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; reversed in part.

*Âsa C. Gracie,* for appellants; *Mehaffy, Reid, Donham & Mehaffy,* of counsel.

1. Appellee is a foreign corporation and has not complied with the laws of this State. The contract is void. Act of May 13, 1907; 128 Ark. 211; 115 *Id.* 166.

2. The sureties are not liable because a material alteration was made in the letter of credit. The unauthorized alteration of the contract discharged the sureties. 56 Ark. 50; 66 *Id.* 287; 71 *Id.* 601; 86 *Id.* 212; 93 *Id.* 479; 113 *Id.* 421; 123 *Id.* 487; 122 *Id.* 528. It was a material alteration and increased the liability. 20 Cyc. 1490; 74 Ark. 601; 174 Fed. 22.

3. There is no liability as the letter of credit was given for only 35 days, and was never extended but expired. 113 Ark. 31; 61 *Id.* 420; 74 *Id.* 241; 12 R. C. L. 1062; 39 L. R. A. (N. S.) 726. The contract was not retroactive. 76 Ark. 415. The increase in liability released the sureties. 74 Ark. 601; 174 Fed. 22.

*Geo. W. Emerson* and *W. H. Donham,* for appellee.

1. The relation was that of vendor and purchaser and not principal and agent and appellee was not doing business in Arkansas contrary to law. It was a Tennessee contract and valid. 47 Ark. 519; 112 *Id.* 380. The Act of 1907 does not apply. 59 *Id.* 428; 115 Ark. 166; 126 *Id.* 597; 124 *Id.* 539; 131 *Id.* 15.

2. There was no material alteration releasing the sureties. 148 Ill. 349; 131 Ark. 179; 1 R. C. L. 969. Where the alteration is made by a stranger it does not release the parties. 2 C. J. 1233-5; 1 R. C. L. 983-4; 50 Ark. 358; 72 S. W. 715. It was a mere spoliation. 2 C. J. 1236-7; 1 R. C. L. 985; 76 Vt. 22.

3. The sureties are liable on the letter of credit for all indebtedness of Robertson and had not expired. 12 R. C. L. 1065, 1062. It was a continuing guaranty. 12 R. C. L. 1062; 145 Ill. 488; 28 Vt. 200; 46 Mich. 70; 74 Ark. 241; 26 Cyc. 976; 18 R. C. L. 533.

4. There was no breach of contract by appellee. 113 Ark. 31.

McCulloch, C. J.  This action was originally instituted in the circuit court of Pulaski County by appellee to recover the amount of a debt alleged to be due on contract for the sale of books, but the cause was, without objection, transferred to the chancery court and proceeded to final decree in favor of appellees.

The action is against Charles R. Robertson, the obligor in the contract of sale, and against W. E. Harrington and J. S. M. Cannon as guarantors of said purchaser.  Appellee is a foreign corporation doing business at Nashville, Tennessee, and the contracts in suit were executed in the city of Little Rock.  The contract between appellee and Robertson, dated January 5, 1912, provided for the sale of books by appellee to Robertson during the year 1912, and "as much longer as can be mutually agreed upon," the books being purchased by Robertson for resale in certain territory in this State assigned to him by a stipulation in the contract, and he agreed to engage in the business of selling books in that territory for the period mentioned and to handle the publications of appellee to the exclusion of all others.  The written guaranty signed by Harrington and Cannon as sued on, bears date of January 5, 1912, and reads as follows:

"The Southwestern Company, Nashville, Tennessee. Gentlemen:  I, we, hereby become responsible to you for the payment for books and for cash furnished or other goods shipped by you to Charles R. Robertson, according to his orders from time to time, provided the said Charles R. Robertson shall fail to make payment therefor at Nashville, Tennessee, within a reasonable time after date of each shipment or item furnished; and provided, further, that the indebtedness for which I, we, hereby become responsible at any one time shall not exceed five hundred ($500) dollars.  I, we, hereby waive both notice of acceptance of this letter of credit and notice of default in payment as above provided."

It is alleged in the complaint that the total indebtedness of Robertson to appellees under the contract is the sum of $787.95, and judgment was prayed against him

for that amount and against the guarantors for the amount of the bond. The decree was in accordance with the prayer of the complaint.

It is first contended that appellee should be denied relief on the ground that it is a foreign corporation and has not complied with the statutes of this State with reference to filing with the Secretary of State articles of incorporation and obtaining authority to do business here.

The contract is not entirely free from ambiguity, but no effort was made by either party to clear up the ambiguity, and, considering the instrument as a whole in connection with the contract of guaranty, it should, we think, be interpreted as a contract for the sale of goods, and not for the creation of the relation of agent between Robertson and appellee for doing business in Arkansas. A contract for the sale of merchandise to be shipped from appellee's place of business in Tennessee to the purchaser here does not constitute doing business in this State so as to bring the transaction under the ban of our statute, which prohibits a foreign corporation from doing business here without first filing copies of its articles of incorporation and obtaining permission to do business. *Gunn* v. *White Sewing Machine Co.,* 57 Ark. 24.

No other defense is insisted upon here in behalf of appellant Robertson, and the decree against him is, therefore, correct.

The other appellants, Harrington and Cannon, present the additional defense that there was an alteration of their contract after they signed the instrument and that for that reason they are not bound. The contract between appellee and Robertson and the guarantors was negotiated and consummated on the part of appellee by its agent, J. S. Phillips. Appellee furnished Phillips with printed blanks both as to the form of contract with the purchaser and with the guarantors, and Phillips signed the contract with Robertson for his principal and accepted the contract with the guarantors. The printed blanks for both of the contracts are now in the form they were when delivered, except that the original blanks were prepared

so as to provide for payment to be made by Robertson within thirty-five days after date of each shipment, and the contracts were changed so as to provide for payment within a reasonable time after each shipment. The words "thirty-five days" in the printed blanks were erased by running a line through them, and the words "a reasonable time" were substituted and written in ink. This was done in the written contract between Robertson and appellee as well as in the separate contract with the guarantors. Harrington and Cannon both testified that they signed the contract of guaranty without the alteration having been made and delivered the same to Robertson, and that they did not consent to any change. Robertson testified that Phillips made the alteration in each of the writings. Phillips testified that he altered the contract with Robertson by the insertion of the substituted words, but he denied that he changed the contract of guaranty, and testified that the substituted words were in the handwriting of Robertson. The original instruments were introduced in evidence, and were brought up for our inspection, and we can not say that the chancellor erred in finding that the alteration in the contract of guaranty is in the handwriting of Robertson, and not in the handwriting of Phillips. Still, it is clearly established by the evidence that the alteration was made in the contract of the guarantors after it left their hands and without their knowledge or consent, and that the alteration of the blank form of contract between Robertson and appellee was changed by Phillips so as to conform to the agreement reached between him and Robertson in the negotiations. The alteration by erasure is an obvious one, and, while we cannot say that there is a preponderance of the testimony against the finding of the chancellor to the effect that Robertson made the alteration, we are of the opinion that Phillips, the agent of appellee, was chargeable with notice of the change, and that he, in fact, changed the blank in the contract with Robertson to conform to the same language used in the guaranty contract. There is no presumption of unauthorized alteration from the fact that

the erasure appears on the face of the instrument itself so as to put the burden of proof on the party who offers the instrument in evidence (*Klein* v. *German National Bank,* 69 Ark. 140) but the obvious alteration in the instrument was sufficient, under the circumstances of this case, to put the party who accepted the instrument on notice. Phillips admits that he changed the form of the contract before it was signed, and he was bound to take notice of an obvious change in the wording of the instrument signed by the guarantors, and he should have inquired whether or not the alterations were made before the instrument left their hands. He could not shut his eyes to the obvious alteration and allow his principal to take advantage of his ignorance.

Now, it is contended in the first place by learned counsel for appellee that the change is an immaterial one, and, therefore, does not absolve the guarantors from liability, but in this contention we think counsel are clearly mistaken. The substitution of the other words changed the time and method of performance by the principal whose obligation was guaranteed. In other words, it changed the language of the contract from a requirement for payment by the principal in thirty-five days, a definite time, to a different requirement, viz.; payment within "a reasonable time," which is not in itself definite, but might depend on the circumstances. This is a material change. *Chism* v. *Toomer,* 27 Ark. 108; *Gist* v. *Gans,* 30 Ark. 285; 2 Corpus Juris, p. 1200.

Counsel also insist that the facts show such an alteration as constituted a spoliation of the instrument which does not discharge the guarantors from liability. The contention is that a change in the language of the contract by Phillips, or by some one else with his knowledge, constituted a spoliation, and counsel invoke the rule stated in an encyclopedia, as follows:

"Where the change is made by one who is or was the agent of one of the parties, but without any authority from the principal, either express or implied from the circumstances, to make any changes, and the matter is

outside the scope of his particular employment, the act is generally considered to be a mere spoliation and has no effect upon the instrument or the rights and liabilities of the parties thereto, unless the alteration is ratified by the principal. Thus, one who procures a writing as an agent and holds it temporarily for transmission to his principal is a stranger within the meaning of the rule that the changing of a written instrument by a stranger is a mere spoliation." 2 C. J. 1236.

The doctrine thus stated is undoubtedly correct (*Andrews* v. *Galloway,* 50 Ark. 358), but we do not think the facts of this case bring it within that rule. Phillips was not the mere custodian of the instrument and did not hold it merely for transmission to his principal, but he was the agent of appellee with full authority to negotiate the contract, and did in fact negotiate the contract and sign the written instrument for his principal. Phillips was not a stranger to the contract in any sense, but was the authorized agent of appellee. He was not, it is true, authorized by his principal to do the wrongful act of altering the contract of guaranty after it was delivered to him, but he had authority from his principal to negotiate the contract which binds the principal to any act of the agent done within the apparent scope of his authority, and knowledge on the part of the agent as to the unauthorized alteration is imputed to the principal. In fact, the acceptance by appellee of the contracts in the altered form constituted a ratification of the act of the agent in accepting them in that form, and if Phillips was responsible for the unauthorized alteration or had knowledge of it, his principal is bound.

Our conclusion is, therefore, that the change in the instrument signed by the guarantors constituted an alteration and not a spoliation, and that it discharged the guarantors from liability.

The decree against appellant Harrington and Cannon was not warranted by the facts, and the same is reversed and the cause as to them is dismissed. The decree against Robertson is affirmed.