OUACHITA RURAL ELECTRIC COOPERATIVE CORPORATION
*v.* BOWEN.

4-6619                                    158 S. W. 2d 691

Opinion delivered February 16, 1942.

*Gaughan, McClellan & Gaughan,* for appellant.

*R. H. Peace,* for appellee.

SMITH, J. On September 15, 1939, appellee executed to appellant, a rural electric co-operative corporation, a right-of-way easement across an 80-acre tract of land which he owned, granting the right ". . . to place, construct, operate, repair, maintain, relocate and replace thereon . . . an electric transmission or distributing system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling."

Appellee declined to permit appellant to enter upon the land, for the reason that appellant was not proposing to construct the transmission line upon the route agreed upon as shown by a plat exhibited to appellee when the easement was granted, whereupon appellant filed suit to enjoin appellee from interfering with the construction of the line. The relief prayed was granted, but appellee was awarded damages in the sum of $34, the value of certain timber which had been cut down to clear the right-of-way for the power line, and from that decree appellant has appealed.

The basis of the appeal is that appellee had granted a right-of-way, which carried, as an incident to the grant, the right to cut trees in clearing the right-of-way. This is ordinarily true, and would be true here but for the circumstances under which the grant was obtained.

Blanks were used by appellant's right-of-way agent, and in obtaining a permit it was necessary only to write in the name of the grantor and the description of the land to be crossed. When appellee was asked to execute such a grant there was exhibited to him a plat showing the route of the power line across his land, according to which the line crossed only a corner of his land, and only two poles would be placed thereon. Through the objection of an adjacent landowner, who objected to the route through his land, it became necessary to change the route through appellee's land, and, without consulting appellee, appellant undertook to make the change. The effect of the change was to enter appellee's land in the center of the south forty, and to run west to the property line, and then north through both 40-acre tracts for the additional distance of a half-mile. In doing this, the new line ran through some timber land owned by appellee, through a gravel pit which he owned and over his barn and outhouses. When appellee declined to permit this change in the route, the injunction suit was filed.

Now, the printed contract permitted this change of route, and although appellee was unaware of that provision in the contract the court held that appellee was bound by the provisions of his grant which permitted the relocation of the line, inasmuch as the execution of the contract had not been fraudulently procured, but allowed damages resulting from the change of route. Nevertheless, it must be remembered that the line was not located on the route represented to appellee as its location. Had the line been located according to the plat shown appellee, it would not have run through his timber; and it would have been unnecessary to cut any of it down.

There is some conflict about the plat and the location of the line shown on it; but we have no hesitancy in accepting appellee's testimony in this respect as true, as

the court did in awarding damages. If any doubt existed, the allegations in the petition for the injunction would remove that doubt, it being there alleged that "Respondent now refuses to allow petitioner to go upon the right-of-way heretofore granted and place poles upon which to string its wires across said land. It will only be necessary that two poles be placed upon the land of respondent." This allegation would have been true had appellant proposed to construct the line in accordance with the plat the exhibition of which to appellee induced him to grant the right-of-way.

The right-of-way agent was asked if the plat did not show that "this line was to cross only a corner of one forty," and he answered, "Now, I don't remember exactly." However, the effect of his testimony was that it did not. He was asked to produce the plat, and agreed to do so, but the record recites that the plat referred to was not attached for the reason that it was not produced. Appellee testified that he would not have voluntarily granted the right-of-way but for the representation made to him as to the location of the route of the line as shown by the plat.

It would be a fraud in law, although no fraud was intended, to permit appellant to thus change the route without compensating the damages which would not otherwise have been incurred.

At § 86 of the chapter on Easements in 17 Am. Jur., p. 987, it is said: "The rule has been established in many jurisdictions that if an easement is granted in general terms which do not fix its location, the owner of the servient estate has the right, in the first instance, to designate the location of such easement. This right, however, must be exercised in a reasonable manner with due regard to the rights of the owner of the easement. In this situation, if the owner of the servient estate does not designate the location, the person entitled to an easement may select a suitable route, taking into consideration the interest and convenience of the owner of the land over which the easement passes. . . . The rule has also been established that the parties may agree by parol as to the location of a way. Evidence of such agreement is admissible

and does not contradict or vary the deed, provided such way is located within the boundaries of the land over which the right is granted. Thus, where a deed conveys an easement over certain land, but fails to locate exactly the line over which the easement extends, parol evidence has been held admissible so to locate it.''

And in the next section of the same work it is said: ''The general rule is that the location of an easement once selected cannot be changed by either the landowner or the easement owner without the other's consent. The reason for this rule is that treating the location as variable would incite litigation and depreciate the value and discourage the improvement of the land upon which the easement is charged. Accordingly a definite location of an easement determines and limits the right of the grantee so that he cannot again exercise a choice. Similarly, a definite location binds the grantor so that he has no right either to hinder the grantee in the exercise of his right or to compel him to accept another location, although the latter location may be equally convenient with the right or privilege originally granted.''

The parol testimony makes very clear the fact that the location of the easement was agreed upon, and if a re-location is desired damages must be compensated which would not otherwise have been occasioned.

Now, it may be true, as appellant insists, that the general grant of a right-of-way, with right of re-location, would confer the right to select the location most convenient to the grantee; but that principle does not control here, the facts in the instant case being that a voluntary grant of a right-of-way was executed upon the representation that only a corner of appellee's land would be crossed, and only two poles placed thereon. That location would have rendered unnecessary the cutting of any of appellee's timber.

We are cited to cases like the annotated case of *Collins* v. *Alabama Power Co.*, 214 Ala. 643, 108 So. 868, 46 A. L. R. 1459, in which case a headnote reads as follows: ''Under a grant to a power company of a right-of-way for a transmission line with the right to cut and remove

'danger trees' adjacent thereto when necessary, the grantee may remove trees which by reason of their size or condition at the time of the grant, or subsequently, and their contiguity to the right-of-way, involve a concrete threat of injury to the transmission line.''

This rule would be applicable here had the transmission line been erected across the "corner of the forty," as shown on the plat, or in a case where there was no agreement as to where the line would cross the owner's land; but, as has been shown, that is not the case here presented.

The damages awarded for the timber cut are very moderate, and fully sustained by the testimony. No other damages were assessed, but there is no appeal from this failure.

The decree is, therefore, affirmed.